361 So.2d 666 (1978)
In re John Louis EVANS, III and Wayne Eugene Ritter
v.
STATE of Alabama.
Ex parte John Louis Evans, III and Wayne Eugene Ritter.
77-180.
Supreme Court of Alabama.
May 19, 1978.
Rehearing Denied June 30, 1978.
Al Pennington, Mobile, Francis A. Poggi, Jr., Fairhope, for petitioners.
William J. Baxley, Atty. Gen., and Jack M. Curtis, Asst. Atty. Gen. for the State.
PER CURIAM.
We granted certiorari in this death penalty case to determine whether or not the *667 Alabama Court of Criminal Appeals was correct in its interpretation and application of Alabama's Death Penalty Statute, Act No. 213, Section 2(b), Acts of Alabama 1975, Regular Session, vol. I, p. 701, et seq. [§ 13-11-1 through § 13-11-9, Code 1975].
The facts of this joint appeal are set forth in the opinion of the Court of Criminal Appeals, see John Louis Evans, III, and Wayne Eugene Ritter v. State of Alabama, [1 Div. 837] 361 So.2d 654 (Ala.Cr.App. 1977). Briefly, these two petitioners were convicted by a jury in the Circuit Court of Mobile County, Alabama, of the intentional killing of Edward A. Nassar, operator of a Mobile pawnshop, which murder occurred while petitioners were robbing the victim at gunpoint and while Mr. Nassar's young son was looking on. Following a general verdict of guilty "as charged in the indictment" the trial court conducted a hearing on mitigating and aggravating circumstances, in accordance with the mandates of the Act, after which it sentenced each of the petitioners to death.
At every important stage of the case, i. e., before the grand jury, before the petit jury, and before the trial judge, each of the petitioners requested that he be given the death penalty. Neither of the petitioners indicated that he wished to prosecute an appeal of his conviction. The case is before us because appointed counsel have appeared and filed amid curiae briefs. Notwithstanding that neither petitioner has expressed dissatisfaction with his conviction nor his death sentence, nevertheless, we have undertaken a review of this case because of the State's dominant and overriding interest in ensuring that the death penalty is imposed only for utmost of compelling legal reasons.
A principal issue raised by petitioners concerns the sufficiency of the indictments to charge offenses under Act 213. We cannot agree that the indictments are insufficient or defective. Specifically, we cannot agree with the dissent that the State must allege in the indictment that the defendant was engaged in robbery and, while robbing, the victim was intentionally killed, but that the State cannot allege that the victim was intentionally killed while defendant was engaged in robbing him. We think either allegation sufficiently apprises the defendant of that with which he is charged. To adopt any other rationale, would, we think, constitute a rather narrow construction, neither called for, nor required, in our judgment, by our statutory rules of construction.
Having carefully considered each of the issues raised on petition for writ of certiorari filed by petitioner Evans, we have concluded that there is no merit therein and that the Court of Criminal Appeals' decision ought to be affirmed on the authority of Jacobs v. State, 361 So.2d 640 (Ala.1978, [M.S. May 19, 1978]). Therefore, the judgment of the Court of Criminal Appeals affirming the conviction and sentence of petitioner John Louis Evans, III, is affirmed.
It is specifically argued on petitioner Ritter's behalf that, because he did not fire the weapon causing death, he could neither be charged nor convicted under Act No. 213, since that Act's § 2(b) does not permit intent to be supplied by the "felony-murder doctrine." Amici curiae concede that Ritter could have been charged with felony-murder itself under Tit. 14, § 314, Code of Alabama 1940 (Recompiled 1958) [now § 13-1-70, Code 1975] although for conviction thereunder the death penalty could not be imposed. Because of the probability of merit in this contention and because this contention has not been treated by the Court of Criminal Appeals, we reverse and remand the decision of the Court of Criminal Appeals with respect to petitioner Ritter to that court for consideration of the applicability of the "felony-murder doctrine," under § 2(n), of the Act.
AFFIRMED AS TO PETITIONER EVANS.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.
*668 JONES and SHORES, JJ., dissent. See views expressed in their dissents in Ex parte Jacobs, 361 So.2d 640 [M.S. May 19, 1978].
BEATTY, J., dissents with opinion.
REVERSED AND REMANDED AS TO PETITIONER RITTER.
All the Justices concur.
BEATTY, Justice (dissenting).
I dissent from the majority decision to affirm Evans' case. I would reverse Evans' case.
My review of this case is premised on general principles governing the review of criminal cases. These principles bear not only longstanding historical importance, but they are well-known to the Bench and Bar of Alabama.
First, criminal statutes are strictly construed in favor of the persons sought to be subjected to their operation, Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. den. 265 Ala. 700, 90 So.2d 238 (1956), and such statutes reach no further in meaning than their words. Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952). As Mr. Justice Brown stated in Fuller, supra, referring to statutory crimes:
`* * * "A penal statute cannot be extended by implication or construction to cases within the mischief, if they are not at the same time within the terms of the act, fairly and reasonably interpreted." . . .'
Secondly, allegations in an indictment must be sufficiently clear to enable a person of common understanding to know with what offense the indictment charges him. Tit. 15, § 232, Alabama Code (Recomp.1958) (now Code of Ala.1975, § 15-8-25).
The Court of Criminal Appeals has jurisdiction to review a decision in which the death penalty is imposed, §§ 12-3-9, XX-XX-XXX, Code of Ala. 1975, and that Court has the duty to examine the entire record to determine whether any error exists prejudicial to the defendant. Lee v. State, 265 Ala. 623, 93 So.2d 757 (1957). The terms of § 12-22-241, Code of Ala.1975, authorizing the appellate court to consider any testimony seriously prejudicial even in the absence of objection, do not limit that duty to the transcript of the evidence. Cf. Lee v. State, supra. Thus the Court of Criminal Appeals was under a duty to examine the legality of the indictments. The Court of Criminal Appeals must notice a fatal defect in the indictment which will not support a judgment notwithstanding the fact that no objection was taken to the indictment in the trial court. Likos v. State, 28 Ala.App. 231, 182 So. 81 (1938).
On certiorari to the Court of Criminal Appeals, this Court will not review the findings of fact of the Court of Criminal Appeals but will review questions of law, which may include misapplication of law to the facts as found by that Court. Flannagin v. State, 289 Ala. 177, 266 So.2d 643 (1972). The duty of this Court to follow these principles in all cases is clear, regardless of the gravity of the offense charged or the notoriety attendant to it.
Omitting the formal parts, the indictment against Evans reads as follows:
 The GRAND JURY of said County charge, that, before the finding of this indictment
 JOHN LOUIS EVANS, III, alias JOHN LEWIS EVANS, III, alias JOHN L. EVANS,
 III, alias JOHN LOUIS EVANS, alias JOHN EVANS
 whose name is to the Grand Jury otherwise unknown than as stated,
did unlawfully, intentionally and with malice aforethought kill EDWARD A. NASSAR by, to-wit:
on January 5, 1977, at a location known as The Pawn Shop, 3225 Springhill Avenue, Mobile
County, Alabama, and while the said EDWARD A. NASSAR was an attendant at The Pawn Shop,
EDWARD A. NASSAR was shot with a pistol in the back, during which time JOHN LOUIS
EVANS, III, alias JOHN LEWIS EVANS, III, alias JOHN L. EVANS, III, alias JOHN LOUIS
EVANS, alias JOHN EVANS was attempting to rob the said EDWARD A. NASSAR, in violation
*669
of Act Number 213, Section 2, Sub-Section B (Act #213, § 2(b)) Acts of Alabama, Regular
Session, 1975, against the peace and dignity of the State of Alabama.
2. The Grand Jury of said County further charge, that, before the finding of this indictment,
JOHN LOUIS EVANS, III, alias JOHN LEWIS EVANS, III, alias JOHN L. EVANS, III, alias
JOHN LOUIS EVANS, alias JOHN EVANS, whose name is to the Grand Jury otherwise
unknown than as stated, did unlawfully, intentionally, and with malice aforethought kill EDWARD
A. NASSAR by shooting him with a pistol while the said JOHN LOUIS EVANS, III, alias JOHN
LEWIS EVANS, III, alias JOHN L. EVANS, III, alias JOHN LOUIS EVANS, alias JOHN
EVANS was engaged in the commission of or an attempt to commit a robbery of the said
EDWARD A. NASSAR, against the peace and dignity of the State of Alabama.
3. The Grand Jury of said County further charge, that, before the finding of this indictment,
JOHN LOUIS EVANS, III, alias JOHN LEWIS EVANS, III, alias JOHN L. EVANS, III, alias
JOHN LOUIS EVANS, alias JOHN EVANS, whose name is to the Grand Jury otherwise
unknown than as stated, did unlawfully, intentionally and with malice aforethought kill EDWARD
A. NASSAR, by shooting him with a pistol while the said JOHN LOUIS EVANS, III, alias JOHN
LEWIS EVANS, III, alias JOHN L. EVANS, III, alias JOHN LOUIS EVANS, alias JOHN
EVANS was engaged in the commission of or an attempt to commit a robbery of the said
EDWARD A. NASSAR, to-wit: that on January 5, 1977, at a location known as The Pawn Shop,
3225 Springhill Avenue, Mobile County, Alabama, and while the said EDWARD A. NASSAR was
an attendant at The Pawn Shop, EDWARD A. NASSAR was shot with a pistol in the back, in
violation of Act Number 213, Section 2, Sub-Section B and Section 6, Sub-Section H (Act #213
§§ 2(b) and 6(H)) Acts of Alabama, Regular Session, 1975, in that the said killing was especially
heinous, atrocious or cruel.
 against the peace and dignity of the State of Alabama.
The indictment against Ritter is the same with the exception, of course, that Ritter's name appears in all places wherein Evans' name appears above.
The Court of Criminal Appeals found that:
John Louis Evans, III, and Wayne Eugene Ritter were each charged by indictment with the first degree murder of one Edward A. Nassar by shooting him with a pistol while in the commission of a robbery, being a `capital murder' offense within the meaning of Act No. 213, Section 2, Subsection (b), Acts of Alabama 1975, Regular Session. (emphasis added)
A comparison of the language of the indictments with the language of the Act in question reveals that this conclusion is incorrect.
Act 213 (now codified in Code of Ala.1975, § 13-11-1 et seq.) lists the aggravated offenses for which the death penalty is to be imposed. An analysis of those aggravated offenses, § 13-11-2(a), does disclose that the legislature made murder a capital offense in several specific instances:
2(a)(5) creates the aggravated offense of murder of a peace officer while on duty;
2(a)(6) creates the aggravated offense of murder while the defendant is under a sentence of life imprisonment;
2(a)(7) creates the aggravated offense of murder in the first degree when the killing was done for hire, etc.;
2(a)(10) creates the aggravated offense of murder in the first degree when two or more persons are intentionally killed by one act or by a series of acts;
2(a)(11) creates the aggravated offense of murder in the first degree when a public official or figure is killed because of "his official position, acts or capacity;"
2(a)(12) created the aggravated offense of murder while the defendant is engaged in aircraft "hijacking;"
2(a)(13) creates the aggravated offense of murder when the murder is committed by a defendant who has been convicted of first or second degree murder in the 20 years preceding the crime; and
2(a)(14) creates the offense of murder of a witness (or anyone else in the attempt to *670 kill a witness) subpoenaed to testify against the defendant who procures the killing.
But section 2, Subsection b of that Act (which is now codified in § 13-11-2(a)(2)), reference to which subsection is made in the Court of Criminal Appeals' opinion and in Counts One and Three of both indictments, reads as follows:
Section 2. If the jury finds the defendant guilty, it shall fix the punishment of death when the defendant is charged by indictment with any of the following offenses, and with aggravation, which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses:

. . . . .
(2) Robbery or attempts thereof when the victim is intentionally killed by the defendant . . . . (emphasis added)
When the legislature created these aggravated offenses, it is significant that they used nomenclature well understood by all members of the Bench and Bar of this state, viz., robbery and murder, and thus they expressly delineated the acts made criminal. Robbery always has been understood by lawyers as the term describing the felonious taking of goods of value from the person of another or in his presence by violence to his person or by putting him in fear. Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962). Quite distinctly, however, murder is the unlawful killing of a human being with malice aforethought. Hornsby v. State, 16 Ala.App. 89, 75 So. 637 (1917). It cannot be seriously contended, because an intentional killing occurs during a robbery, that the two offenses, robbery and murder, become the same offense. And since they do not thereby become the same, it follows that by charging a defendant with murder he is not thereby charged with robbery.
In fact, examination of the language of § 2(a)(2) of these aggravated offenses reveals that murder is not necessarily committed under that subsection. That is, when the subsection refers to "when the victim is intentionally killed," it does not necessarily mean murder; it may also refer to man slaughter, which historically is defined as "the voluntary and unlawful killing of a human being without malice." Smith v. State, 68 Ala. 424 (1880). Although "intentionally," may have been viewed in § 2(a)(2) to equate legal malice, i. e., an intent to take human life without legal excuse, Wallace v. State, 41 Ala.App. 65, 124 So.2d 110 (1960), the subsection itself does not necessarily lead to that construction, but may refer only to an "intentional" killing without malice or a "voluntary" killing, and amount to manslaughter only. Thus the aggravated offense of "Robbery" specified in the statute is not equated with the other aggravated "murder" offenses created by that statute as to establish that the legislature itself intended to create a murder offense by enacting subsection 2(a)(2).
Clearly, the language of this statute requires that the indictment charge the accused with robbery wherein death results; that is, robbery becomes the principal aggravated offense when the victim is killed during its commission. By these express provisions, an indictment for aggravated robbery, not for murder, triggers the imposition of the death penalty under this particular section. None of the other offenses created by this statute refer to robbery-murder. What this means is that nowhere in the clear terms of this statute on aggravated offenses for which the death penalty is authorized is there created an offense of murder in the commission of a robbery! That section of the statute dealing with robbery denotes the offense as "Robbery" or attempts thereof when the victim is intentionally killed by the defendant. Although the aggravation is the death which results, clearly the principal offense specified is robbery, and that is the offense with which the defendant must be charged in the indictment! Moreover, subsection 2(b) prohibits the use of the felony-murder doctrine to supply the intent for any crime charged in subsection 2(a). The effect of that restriction is to require proof of an intention to commit the main offense charged, that is, robbery here.
*671 Count One of the indictment against Evans charges that he "did unlawfully, intentionally and with malice aforethought kill EDWARD A. NASSAR . . . while . . . (Evans) was attempting to rob the said EDWARD A. NASSAR, in violation of Act Number 213, Section 2, Sub-section B (Act # 213, § 2(b)) Acts of Alabama, Regular Section, 1975 . . . ." The language in this count is similar to the language in Tit. 14, § 314 (now § 13-1-70), which states in pertinent part that:
Every homicide perpetrated by . . . any . . . kind of wilful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or the attempt to perpetrate, any . . . robbery . . . is murder in the first degree; . . .
Title 14, § 318 (now 13-1-74) limits the punishment for murder in the first degree under § 314 to "imprisonment in the penitentiary for life."
Additionally, the language in Count One is strikingly similar to the language in the code form indictment for first degree murder under Tit. 14, § 318 (now § 13-1-70). This code form, found in Code of Ala.1975, § 15-8-150(72) (formerly Tit. 15, § 259(80)) reads:
MURDER IN FIRST DEGREE. [§ 13-1-70.]
A. B. unlawfully, and with malice aforethought, killed C. D., by shooting him with a gun or pistol . . . .
By contrast, the code form indictment for robbery, a forceful property offense, contains decidedly different accusatory language:
A. B. feloniously took a gold watch, of the value of ........ dollars, the property of C. D., from his person, and against his will, by violence of his person, or by putting him in such fear as unwilling to part with the same. Code of Ala.1975, § 15-8-150, formerly Tit. 15, § 259, Alabama Code (Recomp.1958) (Form 95).
An indictment is an accusation in writing by the grand jury of the county charging a person with an indictable offense. Code of Ala.1975, § 15-8-1. Although an indictment is not fatally defective because of purely formal defects contained therein which do not prejudice the substantial rights of the defendant, Code of Ala.1975, § 15-8-4, nevertheless it must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended, and with such a sufficient degree of certainty as to enable the court, on conviction, to pronounce the proper judgment. Code of Ala.1975, § 15-8-25. Accord, Bowens v. State, 54 Ala.App. 491, 309 So.2d 844 (1974), cert. den. 293 Ala. 746, 309 So.2d 850 (1975); Gayden v. State, 38 Ala.App. 39, 80 So.2d 495 (1954); Presnal v. State, 23 Ala.App. 578, 129 So. 480 (1930). If an indictment fails to meet these requirements it is fatally defective. Likos v. State, 28 Ala.App. 231, 182 So. 81 (1938).
By referring to Act No. 213(2)(b), Count One of the indictment represents an attempt by the grand jury to bring this charge under the authority of that Act. However, it is clear from the language used in Count One that Evans was indicted for murder, not robbery; therefore, Act No. 213(2)(b), which creates the offense of aggravated robbery, was not the statutory authority under which Evans was tried for murder under Count One. Even if we were to construe Count One most favorably for the prosecution, the most that could be said of Count One is that its language is unclear on whether the accused was being charged with felony-murder under Tit. 14, § 314 (now § 13-1-70) or aggravated robbery under Act No. 213(2)(b). Any such confusion existing in Count One is impermissible since it fails to conform to Tit. 15, § 232 (now § 15-8-25) which requires the indictment to "state the facts constituting the offense . . . in such a manner as to enable a person of common understanding to know what is intended." Accord, Ex parte Martin, 354 So.2d 1152 (Ala.1977); Ex parte Allen, 241 Ala. 137, 2 So.2d 321 (1941); Brown v. State, 242 Ala. 485, 7 So.2d 28 (1942). These same considerations apply to *672 Count Three, which likewise indicts Evans for murder committed while he was "engaged in the commission of or attempt to commit a robbery" of the victim. The reference in Count Three to Act No. 213, as I have stated, is at best confusing.
Because of these comparisons, the presumptions attendant to criminal statutes, and the language of the Death Penalty statute itself, I believe Counts One and Three were improper and should not be allowed to support conviction in this case. I regret that the majority of this Court find the language of Counts One and Three only a matter of tweedledum and tweedledee. "The history of liberty," Mr. Justice Frankfurter has written, "has largely been a history of observance of procedural safeguards." The failure to apply those safeguards in this case has resulted in a denial of procedural due process of law.
Count Two clearly charges an offense under Tit. 14, § 314 (now Code of Ala.1975, § 13-1-70), i. e., felony murder "while engaged in the commission of or attempt to commit a robbery." A general verdict of guilty will be referred to a good count, supported by proof, in an indictment which contains both good and bad counts. Fuller, supra; Brooks v. State, 34 Ala.App. 275, 38 So.2d 744 (1949). The difficulty with upholding the conviction under Count Two, however, is that the opinion of the Court of Criminal Appeals reveals that the trial court imposed an improper sentence, for as I have pointed out, the maximum punishment for such a felony-murder is life imprisonment.
This case should be remanded to the Court of Criminal Appeals for its reconsideration based on these views. We should direct that Court's attention to the Alabama law which provides that under an indictment charging the commission of an offense under Tit. 14, § 314, supra, if the evidence allows, the jury is permitted to find a defendant so charged guilty of lesser-included offenses. Tit. 15, § 323, supra (now Code of Ala.1975, § 15-17-1); Ivery v. State, 48 Ala.App. 257, 263 So.2d 712 (1972); Dobbins v. State, 274 Ala. 524, 149 So.2d 814 (1963); Houlton v. State, 254 Ala. 1, 48 So.2d 7 (1950). The record will determine whether or not this requirement was met, and if so, whether the trial court was bound to so charge the jury.