MURDOCK, Justice
(dissenting).
I agree with much of what is said by Chief Justice Malone in his dissenting opinion and with many of the arguments made by Hope Elisabeth Ankrom in her “Motion to Dismiss Indictment.” In her motion, Ankrom argued
“ ‘that “courts in other states which have enacted the same or similar chemical endangerment statutes have determined that such statutes do not apply to prenatal conduct that allegedly harms a fetus”; that “[t]he state’s contention that the defendant violated this statute renders the law impermissibly vague, and therefore the rule of lenity applies”; that “[t]he legislature has previously considered amending the statute to include prenatal conduct that harms a fetus, and declined to do so”; that “the defendant has not been accorded due process because there was no notice that her conduct was illegal under this statute”; that “[t]he prosecution of pregnant women is a violation of the constitutional guarantee of Equal Protection”; and that “[p]rosecution of pregnant, allegedly drug-addicted women is against public policy for numerous moral and ethical reasons.” ’ ”
152 So.Sd at 401 (quoting Ankrom v. State, 152 So.3d 373, 376 (Ala.Crim.App.2011), quoting in turn Ankrom’s motion to dismiss her indictment).
In particular, I would reiterate that criminal statutes must provide ordinary persons with clear notice of what is prohibited. United States v. Sepulveda, 115 F.3d 882, 887 n. 12 (11th Cir.1997). See also Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993); Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952). This due-process requirement is the foundation for the rules of strict construction and lenity applicable to criminal statutes. See generally Castillo v. United States, 530 U.S. 120, 131, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) (explaining that the “rule of lenity requires that ‘ambiguous criminal statute[s] ... be construed in favor of the accused’ ”). In this regard, I note the statement in the main opinion that “it is possible to conclude, as Kimbrough argues, that the legislature understood the original chemical-endangerment statute to protect only children who were already born.” 152 So.3d at 416. Nothing in the statute as now written changes that possibility.[35]
I respectfully dissent.

. Indeed, if it is not possible that the legislature understood the chemical-endangerment statute as protecting only children who are already bom, has it not made into a felony the act of a pregnant mother in ingesting drags prescribed to her by a physician? The statute *434 contains an exception for drugs prescribed to a child, see Ala.Code 1975, § 26-15-3.2(c), but noticeably lacks any exception for controlled substances prescribed to the mother by a physician. (The comment in note 33 of Justice Shaw’s special writing regarding criminal intent and physician-prescribed substances presumes that one cannot be guilty of violating the chemical-endangerment statute without having an intent to harm the child or at least knowledge that the exposure contemplated is likely to do so. The legislature did not include such a requirement in the statute. The only criminal intent prescribed by the legislature relates to the exposure element itself (i.e., the requirement that the defendant "[kjnowingly, recklessly, or intentionally causes or permits a child to be exposed to” the substance or paraphernalia at issue (emphasis added)).)