668 A.2d 447

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DERRICK J. UNDERWOOD, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 3, 1995—Decided December 26, 1995.

130

Before Judges DREIER, A.M. STEIN and CUFF.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Lon Taylor*, Assistant Deputy Public Defender, of counsel and on the brief).

*Deborah T. Poritz*, Attorney General, attorney for respondent (*Debra A. Owens*, Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

**ARNOLD M. STEIN, J.A.D.**

We reverse defendant's conviction for receiving stolen property and remand for a new trial.

On the evening of April 6, 1993, Elena Gelletly loaned defendant her car so that he could take his girlfriend to dinner. Defendant never returned with the car. Gelletly reported it stolen about two days later.

During the next week, defendant called Gelletly twice, telling her that he had driven the car to New Jersey, and intended to drive it back, but that he needed money to buy gas. He asked Gelletly if she could wire him the money. Gelletly told defendant she had reported the car stolen, but said everything would be all right if he returned the car.

On April 15, Officer Harman of the Carneys Point Police Department located the car at the Twin Bridge Apartment Complex pursuant to an anonymous tip. The police apprehended defendant at one of the apartments. Defendant claimed he had been visiting a friend who was going to give him some money and told the police that he borrowed the car from Gelletly, had since spoken with her and was making arrangements to bring the car back.

Defendant claims the trial judge failed to instruct the jury of the State's burden to prove defendant purposely deprived Gelletly of her property, failed to instruct the jury concerning defendant's intent to return the vehicle and failed to adequately define stolen property.

█ Because defendant did not object to the trial judge's instructions, the standard of review is plain error. *R.* 2:10–2. Defendant must show "a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971). Nevertheless, "erroneous instructions are almost invariably regarded as prejudicial." *State v. Vick,* 117 *N.J.* 288, 289, 566 *A.*2d 531 (1989).

*N.J.S.A.* 2C:20–7a defines the crime of receiving stolen property:

> A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner.
>
> [*N.J.S.A.* 2C:20–7a.]

Defendant submits that the intent to permanently deprive a person of his or her property is an essential element of receiving stolen property.

> A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, immovable property of another with purpose to deprive him thereof.
>
> [*N.J.S.A.* 2C:20–3a.]

To deprive another of his or her property means:

> ■ to withhold or cause to be withheld property of another permanently or for so extended a period as to appropriate a substantial portion of its economic value ... or (2) to dispose or cause disposal of the property so as to make it unlikely that the owner will recover it.
>
> [*N.J.S.A.* 2C:20–1a.]

■ Proof that the property was stolen is not necessarily an element of the crime of receiving. In *State v. Bujan,* 274 *N.J.Super.* 132, 133, 643 *A.*2d 628 (App.Div.1994), the New Jersey State Police ran a "sting operation" resulting in the convictions of two defendants for receipt of stolen property. A police detective offered and sold defendants prescription drugs which the detective said were stolen. *Ibid.* The drugs were not actually stolen but were entrusted to the officers for purposes of the sting. *Ibid.* We held that a person can be convicted of receiving stolen property even though the property was not actually stolen, so long as the defendant believes the property was actually or probably stolen. *Ibid.*

■ However, when the defendant charged with receiving is the same person who initially took the property, it is impossible to define this belief without determining defendant's intent toward the property. In *State v. Cole,* 204 *N.J.Super.* 618, 621, 499 *A.*2d 1030 (App.Div.1985), defendant's employer gave defendant permission to use her car for two weeks. Defendant did not return the

car and his employer reported it stolen. *Ibid.* Over two months later, defendant was found in possession of the car in New Jersey and was later convicted of receiving stolen property. *Ibid.* We upheld the conviction, holding defendant's retention of the car almost two months beyond the originally agreed date supported the inference that he intended to permanently deprive the owner of her property. *Id.* at 629, 499 *A.*2d 1030.

We conclude that in order to convict for receiving stolen property under *N.J.S.A.* 2C:20–7a, when defendant is the same person who allegedly stole the property, the State must prove that the defendant intended an unlawful taking. In other words, the State must prove that defendant stole the property.

The model jury charge for receiving stolen property provides:

Merely receiving property that has been stolen is not an offense. It becomes a criminal act when one receives that stolen property knowing it has been stolen or believing that it probably has been stolen.

Under the statute therefore a person is guilty of theft, although (he/she) did not steal the property (himself/herself), when, with either knowledge that the property has been stolen, or the belief that it has more likely than not been stolen, (he/she) obtains possession of it with the awareness or knowledge of what (he/she) is doing. The identity of the original thief, the identity of the owner, or the identity of the person from whom (he/she) received the property is immaterial. Thus, the elements that the State must prove beyond a reasonable doubt to convict the defendant of this charge are:

1. That the property in question was stolen. Property is considered stolen when it is unlawfully taken from another without permission with the purpose of depriving the other of it permanently....

2. That the defendant knowingly received or acquired possession of it....

3. That at the time (he/she) acquired possession of it (he/she) knew it had been stolen or believed that it probably had been stolen....

[*Model Jury Charges,* Receiving Stolen Property (*N.J.S.A.* 2C:20–7a) (Approved June 22, 1982).][1]

The trial judge essentially followed the model charge when he instructed the jury. There was one substantial deviation. When

---

[1] The model charge should be revised. As explained above, stolen property is not an element of receiving stolen property except in the particular situation when the defendant charged with receiving is the same person who allegedly stole the property.

defining stolen property, the judge omitted the phrase "purpose of depriving":

> Property is considered stolen when it's unlawfully taken from another without permission *with the purpose of permanently or for so extended a period as to appropriate a substantial portion of its economic value from the owner.*
>
> [Emphasis added.]

Upon the jury's request, the judge repeated his earlier charge for receiving stolen property. About one-half hour later, the jury asked the judge to explain receipt of stolen property. After repeating the statutory definition, the judge instructed:

> It's obvious from the factual situation that the state presents in this case that the state is alleging that the defendant brought into this state moveable property of another, namely a motor vehicle, which he knew that had been stolen or believing that it was—it had probably been stolen. Because the state, although the state can't charge—the State of New Jersey can't charge him with a theft, that state is in effect charging that he knew it was stolen because he stole it down in Virginia. *But it's not really pertinent to our discussion to worry about who stole it.*
>
> The question, and the questions presented in this, by the state's allegations are that the defendant brought the property into this state, the State of New Jersey, and that at the time that he did so he knew that it had been stolen or believed that it was—it had probably been stolen.
>
> So the elements that the state has to prove are that the property in question was stolen, that the defendant knowingly received possession of it, and by that the state is alleging that he brought that stolen property into the State of New Jersey, and at the time that he did that, at the time that he acquired possession of the property in the State of New Jersey, which of course is the time that he brought it into the State of New Jersey, if he did, that he knew it had been stolen or that he believed that it probably had been stolen.
>
> If the state has proven all of these elements beyond a reasonable doubt, then your verdict is guilty. If not, then the verdict is not guilty.
>
> [Emphasis added.]

The following exchange took place between the judge and jury:

> JUROR 8: I think one of the key points was, if he had knowledge that he was in possession of stolen property subsequent to when he brought it into the state, is that still guilty—I mean, is that still an element?
>
> THE COURT: Well, if he had knowledge, sir, and I don't attempt to trespass on your prerogatives, but if he were in the State of New Jersey and he was in possession of stolen property and if he knew that that property was stolen and he continued in possession of it, then of course he would be in possession of stolen property.
>
> JUROR 8: Thank you.

THE COURT: So that the definition of receiving stolen property, then, is a person is guilty of theft if he knowingly receives—receives means to get, to come into possession of, to come into control of, to possess something, or brings it into this state knowing that it has been stolen or believing that it has probably been stolen. *Under the statute, a person is guilty of theft, although he did not steal the property, although the state alleges that obviously he brought—the state's allegations are that he got the property in Virginia and that he brought it here so that no one else could have stolen it.* I am correct on that, aren't I, counsel?

[DEFENSE COUNSEL]: Yes.

THE COURT: Under the statute, therefore, a person is guilty of theft, although he did not steal the property himself, when with either the knowledge that the property has been stolen or the belief that it has more likely than not been stolen he obtains possession of it with the awareness of the knowledge of what he is doing.

As an example, it would be an obvious example, if someone saw his friend coming out of a stranger's house carrying a television on his shoulder, in which he came to the front steps and sold it to him for five dollars, then there might well be sufficient proof to suggest that he was aware of or knew that the property was probably stolen.

. . . .

JUROR 8: If he has knowledge that the property is stolen at any time when it's in his possession, it's not critical whether he knew it at the time it came into New Jersey, is that correct?

THE COURT: Not under the facts in this case.

. . . .

JUROR 2: Sir, I think one of the hang-ups is initially having permission, when is it considered stolen?

THE COURT: You are the—what you have to do, of course, is to determine those things that we talked about, knowingly receives or brings into this state. You have to determine the state of mind of the defendant at the time that he was in possession of this particular motor vehicle.

[Emphasis added.]

Five minutes later, the jury returned with a guilty verdict.

 A trial judge must "provide a 'comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" *State v. Concepcion,* 111 *N.J.* 373, 379, 545 *A.*2d 119 (1988) (quoting *State v. Green,* 86 *N.J.* 281, 287–88, 430 *A.*2d 914 (1981)). The instructions given to this jury were prejudicially deficient.

Because of the unique facts of this case, it was especially inappropriate for the judge to simply follow the model charge in his initial instructions. "[T]he better practice is to mold the

instruction in a manner that explains the law to the jury in the context of the material facts of the case." *State v. Concepcion, supra,* 111 *N.J.* at 379, 545 *A.*2d 119.

In order for the jury to properly determine defendant's guilt or innocence, they had to first determine whether defendant had the requisite purpose to steal, or purposely deprive Gelletly of, the car. It was insufficient for the judge to include stolen property as an element of the crime without explaining defendant's purpose with respect to the property.

The judge incorrectly charged the jury that it need not worry about who stole the car. As the repeated requests for clarification indicate, the jury was confused as to when property could be considered stolen. The judge further confused the issue of intent when he instructed:

> [A] person is guilty of theft, although he did not steal the property, although the state alleges that obviously he brought—the state's allegations are that he got the property in Virginia and that he brought it here so that no one else could have stolen it.

The jury should have been instructed that the car became stolen if and when defendant formed the appropriate intent to steal.

Because defendant claimed he always intended to return the car to Gelletly, the trial judge also should have instructed the jury on the affirmative statutory defense "that the property was received with purpose to restore it to the owner." *N.J.S.A.* 2C:20–7a. *Cf. State v. Bzura,* 261 *N.J.Super.* 602, 616, 619 *A.*2d 647 (App.Div.1993) (it was not plain error for the trial judge to omit instructions concerning statutory claim-of-right defense to theft by deception because, unlike here, the theory was addressed factually in the jury instructions).

Defendant also claims that Officer Harman's testimony that Gelletly's car was identified in the NCIC (National Crime Information Center) computer as stolen was prejudicial hearsay. Harman testified over defense counsel's objections that the car's vehicle identification number was reported stolen by NCIC, and briefly described NCIC's function. The judge allowed the testi-

mony on the basis that it was not offered for the truth of the matter asserted, but to show why Harman acted as he did.

■ "[T]he rule against hearsay testimony is not violated when a police officer explains the reasons he approached a suspect or went to the scene of a crime by stating that he did so 'upon information received.'" *State v. Irving*, 114 *N.J.* 427, 446, 555 *A.*2d 575 (1989) (quoting *State v. Bankston*, 63 *N.J.* 263, 268, 307 *A.*2d 65 (1973)). Testimony that the information was received from a specific source such as NCIC, however, violates the hearsay rule, and, moreover, "violates the accused's Sixth Amendment right to be confronted by witnesses against him." *State v. Bankston, supra*, 63 *N.J.* at 268–69, 307 *A.*2d 65.

■ In *State v. McGee*, 131 *N.J.Super.* 292, 298, 329 *A.*2d 581 (App.Div.1974), we said that NCIC records could be admitted pursuant to *N.J.R.E.* 803(c)(6) as records of a regularly conducted business activity, if certain criteria are met. Among other things, the State must establish how and when the information furnished by the owner was passed on to the police. *Ibid.* Because Harman testified that the NCIC information came from an anonymous caller, the State could not establish who reported the car stolen. It was error to admit the testimony.

■ The error, however, was harmless. Because Gelletly testified that she reported the car stolen, the testimony was "merely cumulative." *State v. Carter*, 91 *N.J.* 86, 114, 449 *A.*2d 1280 (1982); *State v. Pace*, 171 *N.J.Super.* 240, 253, 408 *A.*2d 808 (App.Div.1979), *certif. denied*, 84 *N.J.* 384, 420 *A.*2d 314 (1980). Nor was defendant's Sixth Amendment right to confrontation violated because Gelletly was available for cross-examination. *Maryland v. Craig*, 497 *U.S.* 836, 844, 110 *S.Ct.* 3157, 3162, 111 *L.Ed.*2d 666, 677 (1990).

■ We agree, however, that defendant was prejudiced because he was not permitted to use the NCIC printout to rebut testimony about when the car was reported stolen. Defendant testified he only had the car five days. Defense counsel recalled

Harman to the stand and attempted to question him concerning the date the car was reported stolen to NCIC. Defense counsel proffered that the NCIC printout would show the car was reported stolen on April 12, three days before defendant's arrest. The trial court sustained the prosecutor's objection that the printout was hearsay.

Under the doctrine of testimonial completeness:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously.

[*N.J.R.E.* 106.]

[A] second writing may be required to be read if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.

[*State v. Lozada,* 257 *N.J.Super.* 260, 272, 608 *A.*2d 407 (App.Div.), *certif. denied,* 130 *N.J.* 595, 617 *A.*2d 1218 (1992).]

The rule exists "to permit the trier of the facts to have laid before it all that was said at the same time upon the same subject matter." *State v. Gomez,* 246 *N.J.Super.* 209, 217, 587 *A.*2d 272 (1991). When a party's statement is put in evidence, the other party is entitled to elicit everything said on the same subject matter. *Ibid.*

Because Harman was permitted to testify as to the contents of the NCIC records, defendant was entitled to elicit testimony concerning any other relevant part of the NCIC records. The date the car was reported stolen would tend to show how long defendant had the car, and thus, was relevant to his intent. *State v. Cole, supra,* 204 *N.J.Super.* at 629, 499 *A.*2d 1030. It was error to disallow testimony concerning the date the car was reported stolen to NCIC.

This error was not harmless. While cross-examining defendant on his claim that he had the car only a few days, the prosecutor said, "testimony was the car was reported stolen on the 7th." Gelletly had testified that she thought the defendant borrowed the car on April 6 and that she contacted the police "a couple of days

after the car was taken." The prosecutor's assertion that the car was reported stolen on April 7 had not been established. Had the jury been informed that the NCIC printout showed the car was reported stolen on April 12, it may well have reached a different conclusion as to defendant's guilt.

Finally, we reject defendant's contention that the verdict was contrary to the weight of the evidence. *R.* 2:11-3(e)(2). *See State v. Cole, supra,* 204 *N.J.Super.* at 629, 499 *A.2d* 1030.

Reversed and remanded for a new trial.